UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
GLORIA JOHNSON, FRED JOHNSON, and
BESSIE CHAVOUS,

                              Plaintiffs,

    -against-                               **REPORT AND RECOMMENDATION**

HOME SAVERS CONSULTING CORP. a/k/a
PROPERTY INVESTMENT CONSULTANTS, INC.,    04-CV-5427 (NG) (KAM)
PHIL SIMON, HOWARD HUGHES, FRED DOUGLAS
WAY, III, ESQ., ROGER H. RODRIGUEZ, AGA
CAPITAL NY, INC., CORE ABSTRACT CORP.,
ARGENT MORTGAGE CO., LLC, AMERIQUEST
MORTGAGE CO., "JOHN DOE" and "JANE DOE," the
last two names being fictitious, said parties being
individuals, if any, having or claiming an interest in, or
lien upon, the premises described herein, and XYZ-1
Corp. and XYZ-2 CORP., the last two names being
fictitious, it being the intention of plaintiffs to designate
any corporation having a legal interest in the premises
described herein,

                              Defendants.

------------------------------------------------------------------------ X
**KIYO A. MATSUMOTO, United States Magistrate Judge:**

        By order dated October 6, 2005, the Honorable Nina Gershon deferred a ruling on plaintiffs' motion for entry of default against certain defendants, including Fred D. Way, III, Esq. and referred the motion to the undersigned, pursuant to 28 U.S.C. § 636(b), for a report and recommendation to determine whether entries of default were proper and, if so, the scope of relief, including injunctive relief, damages, interest, costs, and attorney's fees, to be awarded to plaintiffs Gloria Johnson, Fred Johnson, and Bessie Chavous. On March 15, 2006, Judge Gershon amended the October 4, 2005 order to grant plaintiffs' motions for entry of default

1

judgment against certain defendants, including Way.[1]  Plaintiffs then filed a motion for default judgment against Way on May 1, 2006.  (Docket no. 87.)

Plaintiffs commenced this action on December 15, 2004, serving Way with a summons and complaint on December 21, 2004, and a summons and amended complaint on July 1, 2005.  (Docket nos. 16, 28.)  The amended complaint alleges claims against Way based on the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601; New York General Business Law § 349 ("GBL § 349"); New York Executive Law § 135 ("N.Y. Exec. Law § 135"); and common law claims for fraud, civil conspiracy to commit fraud, and conversion.  Way has failed to respond to either the original complaint or amended complaint, discovery requests, or to plaintiffs' motion for default judgment, and has failed to appear in this action in any manner despite numerous notices served upon him.

Having considered the submissions by plaintiffs, and for the reasons set forth below, the court respectfully recommends that a judgment be entered against Way in the sum of $10,720.75, inclusive of $2,500 in compensatory damages, $7,500 in punitive damages, and $720.75 in costs for service of a subpoena on Way.

### I. BACKGROUND

Plaintiff homeowners Gloria Johnson, Fred Johnson and Bessie Chavous filed this action on December 15, 2004 alleging, upon information and belief, that they had fallen victim

---

[1] On May 9, 2006, the court executed and entered a stipulation and order of dismissal of all of plaintiffs' claims except those asserted against Mr. Way.  (Docket no. 88.)

to a "foreclosure rescue scheme" orchestrated by the defendants. (See docket no. 25, Amended Complaint ("Am. Compl.") ¶¶ 1-2.) Gloria and Fred Johnson live at 246 Woodbine Street in Brooklyn, New York (the "subject property"). (Id. ¶ 10.) The Johnsons purchased the home in March 2001, along with help from Gloria Johnson's mother, Bessie Chavous, who is a co-owner of the property. (Id. ¶ 23.) The subject property was purchased with a $225,837 Fair Housing Act-insured mortgage, which was later assigned to Chase Manhattan Bank ("Chase"). (Id. ¶ 23.)

During the summer of 2004, faced with increasing financial burdens and the prospect of foreclosure on their home, plaintiffs began looking for a way to reduce their monthly mortgage payments. (Id. at ¶ 2.) In September 2004, they contacted defendant Home Savers Consulting Corporation ("Home Savers"), a company advertising its services as a foreclosure rescue specialist and mortgage broker, to inquire about refinancing their home. (Id.) Plaintiffs met with Phil Simon of Home Savers, who explained that Home Savers would submit applications for plaintiffs to obtain a new mortgage. (Id. ¶ 28.) On October 22, 2004, plaintiffs met again with Mr. Simon, who informed them that he had prepared an application for a $425,000 mortgage for plaintiffs. (Id. ¶ 30.) Although Ms. Johnson expressed numerous concerns regarding the documents, Mr. Simon told her not to worry about the considerable increase in debt over their existing mortgage; the fact that certain of the signing documents referred to plaintiffs as the "owner/seller" of the home; the fact that certain of the documents were back-dated to October 21, 2004; or the fact that a document titled "Checklist" set forth a number of charges associated with the $425,000 mortgage. (Id. ¶ 35.)

With regard to the Checklist, Mr. Simon stated that AGA Capital, which was designated on the checklist as receiving $13,750, was an insurance company; that a company

3

named Core Abstract would receive $17,908.50 to pay off plaintiffs' outstanding debts; and that "all the money would go through Fred Way, an attorney for AGA Capital, and that he would make out the appropriate checks." (Id.) The Checklist contains an entry for a payment of $142,943.40 to "Fred Way, as Atty." (See docket no. 90, Supplemental Declaration of Jessica Attie ("Supp. Attie Decl."), Ex. B, Checklist.) Plaintiffs also later obtained and submitted with their default motion a copy of a check dated October 21, 2004 from the IOLA account of Ralph H. Pecorale, Esq. to "Fred Way, Esq. as Attorney" in the amount of $142,943.40. (Copy annexed as Ex. A to Supp. Attie Decl.)

Having never refinanced a mortgage, plaintiffs allege that they had no reason to doubt Mr. Simon's statements and signed the documents. (Am. Compl. ¶ 32.) In actuality, the documents they signed affected a transfer of ownership of their home to defendant Roger Rodriguez. The documents indicate that Rodriguez obtained a $425,000 mortgage from defendant Argent Mortgage Co. on October 21, 2004, the day before plaintiffs signed the documents transferring ownership of their home. (Id. ¶¶ 46, 47.) The October 21, 2004 closing for Mr. Rodriguez's mortgage was held at the office of Ralph Pecorale, Esq., an individual whom plaintiffs had never met. (Id.)

After learning that plaintiffs had actually sold their home rather than refinanced it, Ms. Johnson attempted to rescind the transaction and contacted Chase to request that Chase reject a payoff of the mortgage. (Id. ¶¶ 37-41.) Although Chase had already accepted the payment, an attorney for Chase investigated Ms. Johnson's request, and contacted Mr. Simon and Mr. Way. (Id. ¶¶ 43-44.) Mr. Simon told the Chase attorney that Fred Way had represented plaintiffs at the closing. (Id.) Fred Way also told the Chase attorney that he had represented

4

plaintiffs during the sale and explained the sale and deed transfer documents to them, that they were not "illiterate," and that he could not understand why plaintiffs thought the sale was a refinancing. (Id.) Plaintiffs have asserted that Way signed and notarized numerous documents on their behalf and received a check for $142,943.40 from the proceeds of plaintiffs' mortgage, even though plaintiffs never met Mr. Way or retained him as their attorney. (Am. Compl. ¶ 15; Pltfs' Memo. of Law at 3‑4.)

On February 7, 2005, nearly four months after the transactions involving plaintiffs' home and two months after the initial complaint was filed in this case, Way sent plaintiffs' counsel a letter enclosing a check payable from the IOLA account of Pecorale to plaintiffs in the amount of $140,443.40. (Am. Compl. ¶ 55; copy of letter and check annexed as Ex. A to docket no. 87, Attie Declaration ("Attie Decl.")). In his February 7, 2005 letter, Way stated that the check, which was ostensibly dated December 6, 2004, was sent to plaintiffs on December 14, 2004 but returned as undelivered. (Id.) He did not provide any supporting documentation for this assertion. (Id.) Way also stated: "I am seeking a resolution of this action as I was asked to attend the closing as a courtesy to another attorney. My attorney has been out of the country for some time and I respectfully request additional time within which to have an answer [sic] the complaint sent to your office." (Id.) Plaintiffs' counsel responded to Mr. Way's letter on March 2, 2005, informing him that he could have until April 1, 2005 to answer the complaint, that her office would hold the $140,443.40 check in escrow and that plaintiffs did not accept it as a waiver or settlement of their claims. (Attie Decl. ¶ 6 and Ex. B.)

On or about April 11, 2005, Way sent plaintiffs' counsel a second letter enclosing a set of unrecorded deed transfer documents purporting to return the subject property to

plaintiffs. (Am. Compl. ¶ 57; Attie Decl. ¶ 7, Ex. C.) The deed transfer documents were signed on or about February 16, 2005 by Roger Rodriguez. (Am. Compl. ¶ 57.) On April 19, 2005, plaintiffs' counsel advised Mr. Way, in writing, that plaintiffs would not accept the unrecorded deed documents in lieu of an answer to the complaint or as a waiver or settlement of any of their claims against him. (Id. ¶ 58.) Plaintiffs' counsel also advised Mr. Way that if he did not respond to the complaint, they would move for a default judgment against him. (Id.)

In addition to service of the original and amended complaints on Way, plaintiffs have also served Way with notices of court conferences, a request to enter default, and a subpoena duces tecum directing Way to produce documents and appear for deposition. (Attie Decl. ¶¶ 12-18, 25-26.) The process server for the subpoena served Way at his office on November 14, 2005, after being forced to wait for forty minutes because of Way's refusal to accept service. (Id. ¶¶ 17-18; see also Ex. H, Affidavit of Service and Ex. I, Invoice.) Due to the evasion of service, the cost of service of the subpoena was $720.75. (Attie Decl. ¶¶ 17-18.) Way did not appear for the January 9, 2006 deposition noticed in the subpoena served upon him, nor did he produce any documents in response to the subpoena. (Id. ¶¶ 19, 21) Plaintiffs' counsel also spoke with an attorney named Domenik Napoletano on January 9 and 31, 2006, who inquired whether plaintiffs would consent to vacate the default against Way. (Id. ¶¶ 22-23.) Plaintiffs stated that they would not agree to vacate the default, and neither Napoletano nor Way moved to vacate the default, or made efforts to engage in settlement talks with plaintiffs or respond to the subpoena served upon Way. (Id.) Despite the numerous notices given to Way and his clear knowledge of the action against him, Way has still failed to appear in this action. Way also has a documented history of failing to appear in other litigation against him and

6

defying court orders. (Attie Decl. ¶¶ 27‑31; Ex. L, M.)

Although Way has returned the deed and some of the proceeds of the Argent mortgage to plaintiffs, he has retained $2,500 from the mortgage proceeds. (Pltfs' Memo. of Law at 7.) Plaintiffs have also incurred $720.75 in costs in serving Way with a subpoena. During the period of the pending litigation, as a result of the defendants' actions, plaintiffs feared eviction and were unable to rent out the apartment in their home because the property was no longer held in their name. (Am. Compl. ¶ 59.) In addition, even if plaintiffs had recorded the deed from Rodriguez and applied the $140,443.40 check that Way sent them to the Argent Mortgage, plaintiffs would still owe $42,000 more on the mortgage than they owed on their Chase mortgage. (Id.)

## II. DISCUSSION

A.  **Determination of Damages on a Motion for Default**

The Second Circuit has approved the holding of a damages inquest by affidavit without an in-person court hearing following a default, "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). Moreover, where "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998); see also Au Bon Pain v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default judgment that is entered on the well-pleaded allegations in a complaint

7

establishes a defendant's liability, see Bambu Sales, Inc. v. Ozark Trading Inc., 58 F.2d 849, 854 (2d Cir. 1995), and the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks, Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where, as here, default has been noted, a party's recovery is limited to the amount prayed for in its demand for judgment. Fed. R. Civ. P. 54(c); Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 683 (2d Cir. 1993).

In their motion for default judgment, plaintiffs seek: (1) compensatory damages due to Way's wrongful retention of $2,500 from the proceeds of the fraudulent sale and subsequent mortgage of plaintiffs' home, (2) punitive damages in the amount of $7,500.00 due to Way's willful and wanton misconduct, and (3) costs incurred due to Way's refusal to appear and attempts to evade service of a subpoena, in the amount of $720.75. Because Judge Gershon entered a default judgment against Way in her March 15, 2006 amended order, the only remaining task is to consider whether plaintiffs have shown that they are entitled to the relief requested.

**B.     Damages**

Way has never appeared or attempted to answer the allegations in the original and amended complaints against him, provide testimony or produce documents in response to the subpoena served upon him, or respond to plaintiffs' motions for default and entry of default judgment against him. However, default judgment having been entered against Way, and based on the allegations of the amended complaint and the declarations and documents submitted by plaintiffs, the court will examine the bases for each of plaintiffs' claims for damages against

Way.

### 1. TILA and RESPA

Plaintiffs' claims under the TILA allege that Way violated certain of the disclosure and rescission requirements of the TILA, 15 U.S.C. § 1601 *et seq.* and its implementing regulation, Regulation Z, 12 C.F.R. § 226. However, the TILA imposes these requirements on creditors, defined in 15 U.S.C. § 1602(f) as a person who both (1) "regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required," and (2) "is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." Way is not alleged to have acted as a creditor in the October 2004 transaction, and no damages are merited under the TILA.

Plaintiffs' claims under RESPA allege that (1) Way gave or accepted kickbacks or other things of value in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(c), and (2) gave or accepted a portion, split or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c). A "settlement service" includes any service provided in connection with a real estate settlement, including services rendered by an attorney. 12 U.S.C. § 2602 (3).

Title 12 U.S.C. § 2607(a) prohibits fees, kickbacks or other things of value given or accepted "pursuant to any agreement or understanding . . . that business incident to or a part of

9

a real estate settlement service involving a federally related mortgage loan shall be referred to any person." The facts alleged by plaintiff and presumed to be established, based on Way's default, do not clearly establish that Way accepted a fee, kickback or other thing of value pursuant to such a referral agreement.

Title 12 U.S.C. § 2607(b) provides that "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Plaintiffs have alleged sufficient facts to find that Way violated this provision, in that plaintiffs' loan is alleged to be a federally related loan as defined in 12 U.S.C. § 2602(1), and Way is alleged to have purported to represent plaintiffs and received at least $2,500 in fees, even though he performed no services on behalf of plaintiffs. See 24 C.F.R. § 3500.14(c) ("A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."); Stith v. Thorne, No. 06-cv-240, 2006 U.S. Dist. LEXIS 80190 (E.D. Va. Sept. 19, 2006) (Lauck, M.J.) (recommending that plaintiff's § 2607(b) claim not be dismissed where plaintiff alleged that defendant "received payment out of the [mortgage] settlement for services that he had not performed and did not intend to perform"), recommendations adopted, 2006 U.S. Dist. LEXIS 80192 (E.D. Va. Oct. 30, 2006).

Pursuant to 12 U.S.C. § 2607(d)(2), "Any person or persons who violate the prohibitions or limitations of [section 2607] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." Accordingly, the court finds it

10

appropriate to award plaintiffs damages in the amount of $7,500, or three times the amount retained by Way for his alleged settlement services.

        2.        N.Y. Gen. Bus. Law § 349 and N.Y. Exec Law § 135

N.Y. Gen. Bus. Law § 349 provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Plaintiffs allege that Way violated N.Y. Gen. Bus. Law § 349 by "fraudulently notarizing plaintiffs' signatures on the deed documents in order to legitimize the transfer of their property to Rodriguez." (Am. Compl. ¶ 83.)

N.Y. Exec Law § 135 concerns the powers and duties of notaries public who are attorneys at law, and provides that "For any misconduct by a notary public in the performance of any of his powers such notary public shall be liable to the parties injured for all damages sustained by them." Plaintiffs allege that Way violated his duties as a notary public "by notarizing the deed transfer of plaintiffs' property without the signatories before him." (Am. Compl. ¶ 135.)

The court finds that plaintiffs have alleged sufficient facts to demonstrate Way fraudulently notarized the deed documents without having the plaintiffs before him, and that plaintiffs are entitled to compensatory damages of $2,500 for violations of N.Y. Gen. Bus. Law § 349 and N.Y. Exec Law § 135.

        3.        Fraud, Civil Conspiracy to Commit Fraud, and Conversion

The Second Circuit has established five required elements in order to prevail on a

claim of fraud in New York. "[A] plaintiff must show that: (1) the defendant made a false representation of a material fact; (2) with knowledge of its falsity; (3) with scienter, namely an intent to defraud the plaintiff; (4) and upon which the plaintiff justifiably relied; (5) thereby causing damage to the plaintiff." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 239 (2d Cir. 1999) (internal citations omitted). A claim for civil conspiracy to commit fraud is predicated on an underlying claim for fraud. See Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 482 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000) ("Under New York law, civil conspiracy to commit fraud, standing alone, is not actionable . . . if the underlying independent tort has not been adequately pleaded.") (internal quotation marks and citation omitted). Once a fraud is established, a plaintiff must then demonstrate the existence of a conspiracy by showing "(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy." Richardson v. Artrageous, Inc., No. 93 Civ. 5221, 1994 U.S. Dist. LEXIS 3234, at *11 (S.D.N.Y. March 18, 1994).

With regard to their fraud claim, plaintiffs have alleged that the defendants "fraudulently and knowingly induced plaintiffs to enter the October 2004 equitable mortgage/deed transfer by making intentional misrepresentations and/or failing to provide material information," including by "falsely notarizing plaintiffs' signatures." (Am. Compl. ¶ 90.) With regard to their conspiracy to commit fraud claim, plaintiffs allege that defendants "entered into an agreement to induce plaintiffs to enter the October 2004 equitable mortgage/deed transfer transaction and to re-mortgage plaintiffs' property," and defendants "intentionally, knowingly and willfully participated in this scheme by committing overt acts and making misrepresentations and/or failing to provide material information, in furtherance of the

12

agreement." (Id. 96-97.)

Because Way never contacted plaintiffs or personally made any misrepresentations to them, he is not liable for damages for fraud. However, plaintiffs' allegations, along with the documentation they have submitted, such as the Checklist noting that "Fred Way, as Atty" received $142,943.40 from the proceeds of the mortgage, and the October 21, 2004 check from Ralph Pecorale, Esq. to Way for the same amount, establish an agreement between Way and Simon and Home Savers to commit a fraud upon the plaintiffs. Moreover, Way's actions in notarizing plaintiffs' signatures, representing to Chase that he acted as their attorney in the transaction, and receiving a portion of the mortgage proceeds constitute overt acts in furtherance of the agreement. Accordingly, the court finds that damages of $2,500 are appropriate compensation for plaintiffs' civil conspiracy to commit fraud claim against Way.

Plaintiffs have also alleged that Way's actions constituted conversion, because plaintiffs "owned and had a right to possession of the proceeds of the October 2004 mortgage/deed transfer, including the estimated $182,026.29 cash proceeds and closing costs associated with the mortgage. Upon information and belief, those proceeds were distributed to defendant Fred Way and other defendants to this action." (Id. ¶ 118.) In New York, conversion occurs "when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997) (quoting Rolls Royce Motor Cars, Inc. v. Schudroff, 929 F.Supp. 117, 124 (S.D.N.Y. 1996)). The court finds that plaintiffs have sufficiently alleged that they are entitled to $2,500 in compensatory damages for conversion, constituting the funds paid to Way which have not been returned to plaintiffs.

Finally, plaintiffs seek punitive damages under their fraud, civil conspiracy to commit fraud, and conversion claims. Under New York law, where a tort claim "arises from a breach of contract," such as a claim for fraudulent inducement to enter a contract, a plaintiff seeking punitive damages must demonstrate that (1) defendant's conduct is actionable as an independent tort, (2) the tortious conduct is "gross," "morally reprehensible," and of "such wanton dishonesty as to imply a criminal indifference to civil obligations," (3) the egregious conduct is directed at plaintiff; and (4) the egregious conduct is part of a pattern directed at the public generally. New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316 (1995) (citing Rocanova v. Equitable Life. Assur. Soc., 83 N.Y.2d 603, 613 (1994)). Whether conduct is directed at the public generally depends on whether the conduct constitutes "a gross and wanton fraud upon the public" or "an isolated transaction incident to an otherwise legitimate business." TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 95 (2d Cir. 2005) (citing Walker v. Sheldon, 10 N.Y.2d 401, 406 (1961)).

In the present instance, however, plaintiffs' claims for conspiracy to commit fraud and conversion cannot be said to "arise from" a breach of contract claim. Where a fraud does not arise from a breach of contract claim, plaintiffs must still demonstrate that the defendant's acts constitute "willful, wanton and reckless misconduct," but need not demonstrate a harm to the public generally. Key Bank of N.Y. v. Diamond, 203 A.D.2d 896 (App. Div. 1994); Giblin v. Murphy, 73 N.Y.2d 769, 772 (1988) (finding that plaintiff need not demonstrate harm aimed at public generally to obtain punitive damages in case involving "out-and-out fraud" where "very high threshold of moral culpability" is satisfied). Similarly, where a conversion claim is not based on a breach of contract claim, a plaintiff need not demonstrate a harm aimed at the public

14

generally. See Agamede Ltd. v. Life Energy & Tech. Holdings, Inc., No. 04-cv-2985, 2007 U.S. Dist. LEXIS 4698, at *19 (E.D.N.Y. Jan. 23, 2007) (awarding punitive damages on default judgment for conversion claim, where "the conversion was accompanied by malice, insult, reckless and willful disregard of the plaintiff's rights") (citing Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 232 (2d Cir. 2006) (citations omitted); MacQuesten Gen. Contr., Inc. v. HCE, Inc., 296 F. Supp. 2d 437, 447 (S.D.N.Y. 2003) (noting that conversion "was independent of the terms of the contract . . . and so the requirement of public harm as a prerequisite for punitive damages was not triggered"), aff'd, 128 Fed. Appx. 782 (2d Cir. 2005) .

Plaintiffs allege that the defendants fundamentally misrepresented the nature of the October 22, 2004 transaction, and do not seek damages for breach of contract. They also allege gross and wanton misconduct by Way, in that Way claimed to represent the plaintiffs in the transaction when he had never met them, Way participated in the transaction by improperly notarizing documents and agreeing to receive $142,943.40 in funds from the mortgage proceeds, and Way in fact provided no services of any kind to plaintiffs. Plaintiffs have submitted documentation supporting their claim that Way received a check for $142,943.40 from the proceeds of the mortgage. Moreover, the court finds it appropriate to consider Way's role as an attorney and notary as a factor supporting an award of punitive damages. See Chase Manhattan Bank, N. A. v. Perla, 65 A.D.2d 207, 212 (App. Div. 1978) (finding punitive damages may be considered in fraud action against attorney who "abused his professional status by repeated fraudulent representations . . . for his own personal gain"). Accordingly, the court finds that plaintiffs have demonstrated "willful, wanton and reckless misconduct" by Way sufficient to support a punitive damages award.

15

Moreover, even if the public harm requirement were necessary to establish punitive damages, the court finds that plaintiffs have provided support to establish that Way's actions in this case are not "an isolated transaction," and that his actions appear to be part of a pattern of misconduct aimed at the public generally. The amended complaint establishes that Way was part of a fraudulent scheme that solicited financially distressed members of the public, including plaintiffs, through advertisements in publications such as *Carribean Life*, stating, in part, "HAVING PROBLEMS PAYING YOUR MORTGAGE? *Let Us Help You*!" (Am. Compl. ¶ 25) (emphasis in original). Plaintiffs also point to other litigation involving similar claims against Way. See Attie Decl. ¶¶ 27-31; Johnson-Hines v. Freeman, No. 05-cv-5173 (E.D.N.Y. November 4, 2005) (foreclosure rescue scheme in which Way allegedly acted as attorney for investor); Robinson Electrical v. Woods, Index No. 37841/05 (N.Y. Sup. Ct., Kings County) (alleging that Way steered plaintiff into a fraudulent home improvement scheme); Hinds v. Way, Index No. 48329/99 (N.Y. Sup. Ct., Kings County) (alleging that Way took and retained nearly $40,000 from the sale of two properties while acting as attorney for an estate).

The court thus finds that an award of $7,500 in punitive damages against Way is appropriate for plaintiffs' conversion and civil conspiracy to commit fraud claims.

**C.    Costs**

Plaintiffs seek an award of costs in the amount of $720.75 for the service of a subpoena on defendant Way. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides for an award of reasonable expenses and attorney's fees caused by the failure to obey a court order to provide or permit discovery. See Argo Marine Systems v. Camar Corp., 755 F.2d 1006, 1015

16

(2d Cir. 1985). Rule 37(d) provides for an award of reasonable expenses where a party fails to attend his own deposition after receiving proper notice. See Residential Funding Corp v. DeGeorge Fin. Corp., 306 F.3d 99, 106 (2d Cir. 2002); see also Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986).

After avoiding service, Way failed to appear for his deposition or to provide documents, despite multiple court orders directing that fact discovery be completed. (Attie Decl. ¶¶ 11-21, Ex. H.) Way's appearance and participation in this action would have rendered service of the subpoena unnecessary. In addition, Way's attempts to avoid service of the subpoena increased the cost of serving Way, as established by the process server's affidavit and bill for services. (Attie Decl. ¶ 18, Exs. H, I.) Because plaintiffs have shown that their request for costs is reasonable, it is respectfully recommended that plaintiffs be awarded $720.75.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that a default judgment be entered against defendant Way, in the total amount of $10,720.75, inclusive of: $2,500 in compensatory damages, based on plaintiffs' GBL § 349, N.Y. Exec. Law § 135, civil conspiracy to commit fraud, and conversion claims; $7,500 in punitive damages, based on plaintiffs' RESPA, civil conspiracy to commit fraud, and conversion claims; and $720.75 in costs for service of a subpoena on Way.

Any objections to this Report and Recommendation must be filed with United States District Judge Nina Gershon within ten days of the date of its entry. Failure to object within ten days of the date of entry of this Report and Recommendation will preclude appellate

17

review by the District Court. See 28 U.S.C. § 636(b)(1); Local Civil Rule 6.3; Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989). Any requests for extensions of time to file objections should be made to Judge Gershon.

Plaintiffs shall serve, by hand or overnight delivery, a copy of this Report and Recommendation on defendant Way immediately, and file an affidavit demonstrating service of the same, no later than March 27, 2007.

**SO ORDERED**.

Dated: March 23, 2007
       Brooklyn, New York

                          /s/
                       **Kiyo A. Matsumoto**
                       United States Magistrate Judge
                       Eastern District of New York